**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| HIRAN RODRIGUEZ,<br>*Plaintiff*,<br>v.<br>FEDERAL TRADE COMMISSION,<br>*Defendant*. | Civil Action No. 25 - 2401 (LLA) |

## MEMORANDUM OPINION

Plaintiff Hiran Rodriguez, proceeding pro se, filed this suit against the Federal Trade Commission ("FTC") pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. ECF No. 1. He challenges the FTC's failure to produce records responsive to his FOIA request and its denials of his requests for a fee waiver and for expedited processing. ECF Nos. 1, 13. Mr. Rodriguez and the FTC have filed cross-motions for summary judgment. ECF Nos. 13, 17. For the reasons explained below, the court will deny Mr. Rodriguez's motion and grant the FTC's motion.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In April 2025, Mr. Rodriguez submitted a FOIA request to the FTC, seeking "all records, documents, emails, reports, or other materials from January 1, 2015 to the present, concerning" the following topics:

> 1. Consumer complaints or FTC investigations regarding Meta Platforms, Facebook, Instagram, or WhatsApp involving biometric profiling, behavioral surveillance, or audio/video recording without consent;

> 2. Internal memoranda or staff guidance regarding persistent telemetry, Custom Audience targeting, or data harvesting SDKs operating on Apple iOS devices;
>
> 3. FTC reports or internal documents referencing Hiran Rodriguez (DOB: 08/09/1997), or usage of behavioral data modeling derived from devices located at 820 Grove Ave, Metairie, LA;
>
> 4. Enforcement actions, proposed or closed, against Meta, Facebook, or Instagram, for background surveillance, predictive tracking, or dark patterns that resulted in reputational harm to consumers;
>
> 5. Any third-party data broker disclosures, FTC complaints, or redress efforts involving unauthorized Custom Audience inclusion or inferred targeting of Plaintiff.

ECF No. 1-1, at 2-3; *see* ECF No. 13, at 2; ECF No. 16-3, at 1.[1] Mr. Rodriguez also requested a "fee waiver due to public interest, active civil rights litigation, and indigency" and "[e]xpedited processing under 5 U.S.C. § 552(a)(6)(E), due to urgent need for use in federal litigation." ECF No. 1-1, at 3; *see* ECF No. 13, at 2; ECF No. 16-3, at 1. As support for his request for expedited processing, Mr. Rodriguez explained that he was the plaintiff in a then-pending federal lawsuit against Meta and other entities in the U.S. District Court for the Eastern District of Louisiana. ECF No. 1-1, at 2.[2]

Later that month, the FTC sent Mr. Rodriguez a letter denying his requests for a fee waiver and expedited processing. *Id.* at 5-6; *see* ECF No. 13, at 1; ECF No. 16-3, at 1-2; ECF No. 19-3. The FTC explained that Mr. Rodriguez had not shown that disclosure of the requested information

---

[1] When citing ECF Nos. 1-1, 16-3, and 21, the court refers to the CM/ECF-generated numbers at the top of each page rather than any internal pagination.

[2] That suit was dismissed with prejudice in May 2025. *See Rodriguez v. Meta Platforms, Inc.*, No. 25-CV-197, 2025 WL 1489174 (E.D. La. May 22, 2025), *appeal dismissed*, No. 25-30493, 2025 WL 4477516 (5th Cir. Dec. 4, 2025), *and motion for relief from judgment denied*, No. 25-CV-197, 2026 WL 925531 (E.D. La. Apr. 6, 2026).

was "(1) likely to contribute significantly to public understanding of the operations and activities of the government, and (2) not primarily in the commercial interest of the requester," as required for a fee waiver. ECF No. 1-1, at 5. The FTC further explained that Mr. Rodriguez had not shown a "compelling need" for the records to justify expedited treatment. *Id.* at 5-6 ("Compelling need can be shown in two ways: by establishing that failure to obtain the records quickly 'could reasonably be expected to pose an imminent threat to the life or physical safety of an individual' or by showing that the requester is a 'person primarily engaged in disseminating information' and that an 'urgency to inform the public concerning actual or alleged Federal Government activity' exists." (quoting 5 U.S.C. § 552(a)(6)(E)(v))). The FTC stated that it would place the request on a ten-day hold to allow Mr. Rodriguez to provide a fee agreement. *Id.* at 6. And while the FTC acknowledged that Mr. Rodriguez was entitled to two hours of free search and review, *id.*; *see* 16 C.F.R. § 4.8(b)(3), the agency advised that he was "seeking over 10 years of material related to Meta, Facebook, Instagram and WhatsApp and [two hours] would be insufficient to process this request," ECF No. 1-1, at 6.

Mr. Rodriguez appealed the FTC's determinations to the FTC's Office of the General Counsel. ECF No. 1-1, at 8-13; *see* ECF No. 13, at 2; ECF No. 16-3, at 2. He asserted that his FOIA request "directly relates to alleged ongoing and systematic biometric, behavioral, and unlawful surveillance by Meta and co-defendants [in his Eastern District of Louisiana lawsuit], which implicates FTC enforcement records and regulatory findings going back to 2015." ECF No. 1-1, at 9. Mr. Rodriguez further argued that his federal lawsuit was "of urgent public interest as it involves federal consumer protection violations, civil rights injury, and reputational surveillance harm—core matters of FTC jurisdiction." *Id.* at 10. Mr. Rodriguez accordingly maintained that he was "not seeking records 'primarily in a commercial interest' but in pursuit of

constitutional rights and public protection," thus satisfying the requirements for a fee waiver. *Id.* Mr. Rodriguez also argued that expedited processing was "legally required" because he was a "civil plaintiff asserting imminent reputational and privacy-based injury" and seeking records that "directly inform the conduct of Meta under FTC oversight." *Id.*

In May 2025, the FTC's Office of the General Counsel denied Mr. Rodriguez's appeal. *Id.* at 17-20; *see* ECF No. 13, at 2; ECF No. 16-3, at 2; ECF No. 17-3, at 3; ECF No. 21, at 18-19. The FTC stated in its denial letter that Mr. Rodriguez was not entitled to a fee waiver because he had failed to show that the requested records were not primarily in his commercial interest or that disclosure of the requested information was likely to contribute significantly to public understanding of the operations or activities of the government. ECF No. 1-1, at 19. The FTC further noted that indigence is not a basis for a fee waiver. *Id.* The FTC separately affirmed the denial of Mr. Rodriguez's request for expedited processing because Mr. Rodriguez had asserted only "non-physical injuries" from his failure to obtain the requested records and because his "primary purpose in seeking the requested records [was] for [his] personal use in [his] pending civil litigation." *Id.* at 20. Finally, the FTC explained that Mr. Rodriguez could file a lawsuit under FOIA or seek mediation with the Office of Governmental Information Services ("OGIS") if he wished to continue the dispute. *Id.*

In June 2025, Mr. Rodriguez requested mediation assistance from OGIS, *id.* at 22-46, but he received an automated reply stating that OGIS was experiencing an increase in inquiries and apologizing for any delays, *id.* at 23. Later that month, the FTC sent Mr. Rodriguez a letter advising him that the agency was closing its file on his FOIA request because, after his appeal was

denied, he had not responded to the FTC's request that he enter into a fee agreement or narrow his request. ECF No. 19-6, at 2.[3]

In July 2025, Mr. Rodriguez filed this action, alleging that the FTC's "refusal to timely produce responsive records" violates FOIA. ECF No. 1, at 3. After the FTC filed an answer to Mr. Rodriguez's complaint, ECF No. 11, the court directed the parties to meet and confer and file a joint status report, ECF No. 12. Two days after the court issued its order, Mr. Rodriguez filed a motion for summary judgment. ECF No. 13. The FTC thereafter filed a cross-motion for summary judgment, ECF No. 17, and the court issued a *Fox*/*Neal* order advising Mr. Rodriguez of his obligations under *Fox v. Strickland*, 837 F.2d 507, 509 (D.C. Cir. 1988) (per curiam), and *Neal v. Kelly*, 963 F.2d 453, 456-57 (D.C. Cir. 1992), *see* ECF No. 18. The parties' cross-motions are fully briefed. ECF Nos. 13, 16, 17, 19 to 24.

## II. LEGAL STANDARDS

### A. FOIA

The purpose of FOIA is "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Am. C.L. Union v. U.S. Dep't of Just.*, 655 F.3d 1, 5 (D.C. Cir. 2011) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)). "[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Off. of U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011). A court shall grant summary judgment "if

[3] The FTC's initial letter did not expressly ask Mr. Rodriguez to narrow his request, but, as noted, the FTC stated that the request was "seeking over 10 years of material . . . and [two hours] would be insufficient to process this request." ECF No. 1-1, at 6. The FTC also provided a contact for Mr. Rodriguez if he "ha[d] any questions about the way [the FTC was] handling [his] request or about the FOIA regulations or procedures." *Id.*

the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

An agency's duties under FOIA are triggered "only once [the] agency has received a proper FOIA request." *Citizens for Resp. & Ethics in Wash. v. Fed. Election Comm'n*, 711 F.3d 180, 185 n.3 (D.C. Cir. 2013). A FOIA request must "reasonably describe[]" the records being requested. 5 U.S.C. § 552(a)(3)(A). A request meets this requirement if it is "sufficient [to] enable[] a professional employee of the agency who was familiar with the subject area of the request to locate the record with a reasonable amount of effort." *Truitt v. Dep't of State*, 897 F.2d 540, 545 n.36 (D.C. Cir. 1990) (quoting H.R. Rep. No. 93-876 (1974)). "Broad, sweeping requests lacking specificity are not sufficient." *Dale v. Internal Revenue Serv.*, 238 F. Supp. 2d 99, 104 (D.D.C. 2002). But even where a request has "sufficient precision to enable the agency to identify [the records]," "[a]n agency need not honor a request that requires 'an unreasonably burdensome search.'" *Am. Fed'n of Gov't Emps., Loc. 2782 v. U.S. Dep't of Com.*, 907 F.2d 203, 209 (D.C. Cir. 1990) (quoting *Goland v. Cent. Intel. Agency*, 607 F.2d 339, 353 (D.C. Cir. 1978)). Because it is "the requester's responsibility to frame [his] request[] with sufficient particularity to ensure that searches are not unreasonably burdensome[] and to enable the searching agency to determine precisely what records are being requested," an agency is not required to respond to a request that falls short in either respect. *SAI v. Transp. Sec. Admin.*, 315 F. Supp. 3d 218, 248 (D.D.C. 2018) (second alteration in original) (quoting *Assassination Archives & Rsch. Ctr., Inc. v. Cent. Intel. Agency*, 720 F. Supp. 217, 219 (D.D.C. 1989)).

A court reviews an agency's decision to deny a fee waiver de novo, but judicial review is limited to the record that was before the agency at the time of the waiver request. 5 U.S.C. § 552(a)(4)(A)(vii); *Larson v. Cent. Intel. Agency*, 843 F.2d 1481, 1483 (D.C. Cir. 1988) (per

curiam). The FOIA requester bears the burden of proving that he is entitled to a fee waiver. *Jud. Watch, Inc. v. Dep't of Just.*, 365 F.3d 1108, 1126 (D.C. Cir. 2004).

### B. Pro Se Litigants

The pleadings of pro se parties must be liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). "But on a motion for summary judgment, a *pro se* plaintiff is held to the same evidentiary burdens as those represented by counsel and must therefore 'provide evidence that would permit a reasonable jury to find in his favor.'" *Husain v. Power*, 630 F. Supp. 3d 188, 195 (D.D.C. 2022) (internal quotation marks omitted) (quoting *Prunte v. Universal Music Grp.*, 699 F. Supp. 2d 15, 21-22 (D.D.C. 2010)).

## III. DISCUSSION

Mr. Rodriguez argues that he is entitled to summary judgment because the FTC failed to timely produce responsive records, improperly denied his request for a fee waiver, and improperly denied his request for expedited processing. ECF No. 13, at 3-4. The FTC counters that each of these claims fails, *see* ECF No. 17, at 7-16, and the agency asserts that it is entitled to summary judgment because Mr. Rodriguez "has not paid the required fees," *id.* at 7, and because his FOIA request is not reasonably described, *see id.* at 16-23. The court concludes that the FTC properly denied Mr. Rodriguez's request for a fee waiver and that the FTC was not obligated to respond to his FOIA request—even for the two free hours to which Mr. Rodriguez was entitled—because it would require an unreasonably burdensome search. These conclusions render moot Mr. Rodriguez's argument that the FTC improperly denied his request for expedited processing.

### A. Fee Waiver

FOIA requesters generally must pay reasonable fees associated with processing their requests. *Jud. Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1310 (D.C. Cir. 2003); *see* 5 U.S.C. § 552(a)(4)(A)(ii)(III) (permitting agencies to exact reasonable charges for "document search and duplication" when records are requested for noncommercial use that is not for scholarly, scientific research, or news purposes). A requester is entitled to a fee waiver if "disclosure of the information is in the public interest." 5 U.S.C. § 552(a)(4)(A)(iii). In order to make that showing, a requester must demonstrate that disclosure of the information sought would "(1) shed light on 'the operations or activities of the government'; (2) be 'likely to contribute significantly to public understanding' of those operations or activities; and (3) not be 'primarily in the commercial interest of the requester.'" *Cause of Action v. Fed. Trade Comm'n*, 799 F.3d 1108, 1115 (D.C. Cir. 2015) (quoting 5 U.S.C. § 552(a)(4)(A)(iii)). "While fee-waiver applications are to be 'liberally construed' in favor of finding that requesters meet [this] test, requesters still must justify their entitlement to a waiver of fees in 'reasonably specific' and 'non-conclusory' terms." *Nat'l Sec. Couns. v. U.S. Dep't of Just.*, 848 F.3d 467, 473 (D.C. Cir. 2017) (quoting *Rossotti*, 326 F.3d at 1310).

The parties agree that Mr. Rodriguez's requested records would shed light on the operations or activities of the government. *See* ECF No. 16, at 8 & n.2; ECF No. 21, at 19. The court accordingly proceeds to the second factor: whether disclosure is likely to contribute significantly to public understanding of government operations or activities. Courts assess this factor "along two dimensions: the degree to which 'understanding' of government activities will be advanced by seeing the information; and the extent of the 'public' that the information is likely to reach." *Cause of Action*, 799 F.3d at 1116. A requester "need not demonstrate [his] ability to

reach a 'wide audience,'" but he "must at least show that [he] can 'disseminate the disclosed records to a reasonably broad audience of persons interested in the subject.'" *Nat'l Sec. Couns.*, 848 F.3d at 474 (quoting *Cause of Action*, 799 F.3d at 1116).

In support of his request for a fee waiver in his FOIA request, Mr. Rodriguez cited the "public interest, [his] active civil rights litigation, and [his] indigency." ECF No. 1-1, at 3. In his appeal to the FTC's Office of the General Counsel, Mr. Rodriguez further explained that his FOIA request would shed light on "ongoing and systematic biometric, behavioral, and unlawful surveillance by Meta and co-defendants" in his Eastern District of Louisiana lawsuit, which "implicates FTC enforcement records and regulatory findings." *Id.* at 9. He explained that this "litigation is of urgent public interest as it involves federal consumer protection violations, civil rights injury, and reputational surveillance." *Id.* at 10.

Mr. Rodriguez fails to demonstrate that he intends to disseminate the requested records, so disclosure is not likely to contribute significantly to public understanding of the FTC's operations and activities. 5 U.S.C. § 552(a)(4)(A)(iii). Put another way, even assuming that disclosure of the requested information could advance the public's understanding of the FTC's operations, Mr. Rodriguez has provided no information about his "ability [or] intention to effectively convey or disseminate the requested information to the public." *Prison Legal News v. Lappin*, 436 F. Supp. 2d 17, 26 (D.D.C. 2006). Indeed, he alleged in his FOIA request and appeal that he would use the requested records in his own civil suit, *see* ECF No. 1-1, at 3, 9-10, and he did not mention any plans to disseminate the requested information to anyone, let alone a "reasonably broad

audience of persons interested in the subject," *Nat'l Sec. Couns.*, 848 F.3d at 474 (quoting *Cause of Action*, 799 F.3d at 1116).[4]

Additionally, while the court's review is "limited to the record before the agency," 5 U.S.C. § 552(a)(4)(vii), Mr. Rodriguez's filings in this court also fail to identify or substantiate any intent or ability to convey the requested records to the public. *See generally* ECF Nos. 13, 21. Mr. Rodriguez's briefing instead focuses on how the requested records would inform the public about the FTC's enforcement activities and oversight of Meta, *see* ECF No. 21, at 11-13, but he does not "articulate[] how and to whom [he] will disseminate the requested information," *Pub. Emps. for Env't Resp. v. U.S. Dep't of Com.*, 968 F. Supp. 2d 88, 100 (D.D.C. 2013).

Mr. Rodriguez has thus failed to "state his 'ability and intention' to disseminate the requested information to the public, which 'alone [provides] a sufficient basis for denying the fee waiver request.'" *Espinoza v. Dep't of Just.*, 20 F. Supp. 3d 232, 243 (D.D.C. 2014) (alteration in original) (quoting *Larson*, 843 F.2d at 1483); *see Larson*, 843 F.2d at 1483 (affirming an agency's denial of a fee-waiver request where the requester had "failed to identify the newspaper company to which he intended to release the requested information, his purpose for seeking the requested material, or his professional or personal contacts with any major newspaper companies"); *Bernegger v. Exec. Off. for U.S. Att'ys*, No. 18-CV-908, 2022 WL 579291, at *6 (D.D.C. 2022) (upholding the denial of a fee-waiver request where the requester had "fail[ed] to elaborate on his

---

[4] In his appeal, Mr. Rodriguez cited *Judicial Watch, Inc. v. U.S. Department of Justice*, 133 F. Supp. 2d 52 (D.D.C. 2000), to support the proposition that "records used in litigation and public interest civil rights matters qualify for . . . fee waiver[s]." ECF No. 1-1, at 10-11. But the court in that case reached the opposite conclusion, upholding the agency's denial of a public-interest fee waiver because, as here, the requester had made "'ephemeral'" and "perfunctory assertions" about how disclosure would benefit the public. *Jud. Watch, Inc.*, 133 F. Supp. 2d at 54 (quoting *Am. Fed'n of Gov't Emps., Loc. 2782 v. U.S. Dep't of Com.*, 632 F. Supp. 1272, 1278 (D.D.C. 1986), *aff'd on other grounds*, 907 F.2d 203).

plans to disseminate the requested information”); *cf. Rossotti*, 326 F.3d at 1314 (holding that a requester was entitled to a fee waiver where it had described in its FOIA request various ways the organization communicates information to the public).[5]

**B. Unreasonably Burdensome Search**

An agency generally is not obligated to produce responsive records if the requester has not paid assessed fees. *See Marino v. Dep’t of Just.*, 993 F. Supp. 2d 14, 18 (D.D.C. 2014) (“FOIA requesters generally cannot obtain judicial review of their FOIA claims until they either pay any fees associated with their records request or establish their entitlement to a fee waiver.”); 16 C.F.R. § 4.11(a)(1)(i)(F) (stating that a request to the FTC “will be deemed not to have been received” if the requester does not agree to pay fees); *see also Espinoza*, 20 F. Supp. 3d at 244 (“Since under [Department of Justice] regulations, the request is ‘not . . . considered received’ until the requester agrees to pay assessed fees, [the agency] is under no statutory obligation to produce responsive records; therefore, no improper withholding has yet occurred.”). Here, the parties agree that Mr. Rodriguez did not pay any fees and that the FTC did not conduct a search or produce responsive records. *See* ECF No. 16-3, at 2; ECF No. 17-3 ¶ 13; ECF No. 21, at 20.

Notwithstanding his failure to pay any fees, Mr. Rodriguez was entitled to two hours of search time and up to 100 pages of duplication at no charge under the FTC’s FOIA regulations. *See* 16 C.F.R. § 4.8(b)(3); ECF No. 1-1, at 6; *cf. Donato v. Exec. Off. for U.S. Att’ys*, 308 F. Supp. 3d 294, 312 (D.D.C. 2018). The FTC acknowledged this entitlement in its letter denying his

[5] Because Mr. Rodriguez did not qualify for a fee waiver on this ground, “the court need not analyze if the requested disclosure would be ‘primarily in his commercial interest.’” *Hyatt v. U.S. Pat. & Trademark Off.*, No. 18-CV-2800, 2022 WL 1718983, at *5 n.2 (D.D.C. May 27, 2022) (quoting *Cause of Action*, 799 F.3d at 1115). Mr. Rodriguez also concedes that “indigence alone is not a lawful basis for a fee waiver,” ECF No. 21, at 13, so the court need not address that argument, *see Ely v. U.S. Postal Serv.*, 753 F.2d 163, 165 (D.C. Cir. 1985).

request for a fee waiver, but it stated that his FOIA request was "seeking over 10 years of material related to Meta, Facebook, Instagram and WhatsApp and [two hours] would be insufficient to process this request." ECF No. 1-1, at 6. The FTC accordingly closed Mr. Rodriguez's request after he failed to indicate whether he would enter into a fee agreement after his fee-waiver request was denied or narrow his request such that it could be processed within two hours. *See* ECF No. 19-1 ¶ 9; ECF No. 19-6, at 2; *see also supra* n.3 (explaining that Mr. Rodriguez was on notice that his request would not be processed if he did not narrow its scope).[6]

The FTC contends that it was not required to conduct a search in response to Mr. Rodriguez's FOIA request because the request does not reasonably describe the records sought, ECF No. 16, at 16-21; would require an unreasonably burdensome search, *id.* at 22-23; and would require overly burdensome post-search efforts, *id.* at 23-24. The court agrees that Mr. Rodriguez's request would require an unreasonably burdensome search far exceeding his two hours of free search time, so the FTC was under no obligation to conduct a search or produce responsive records.

As noted, an agency's duties under FOIA are triggered "only once [the] agency has received a proper FOIA request." *Citizens for Resp. & Ethics in Wash.*, 711 F.3d at 185 n.3. A proper request "reasonably describes" the records being requested. 5 U.S.C. § 552(a)(3)(A). "An

---

[6] FTC regulations provide that the agency may close a FOIA request if the requester does not agree to pay fees *and* has been notified of the estimated costs. *See* 16 C.F.R. §§ 4.8(d)(2)-(3), 4.11(a)(1)(i)(F). Here, the FTC did not provide Mr. Rodriguez with an estimate of fees after it denied his request for a fee waiver, and it closed his request after he "provided no further response with respect to a fee agreement." ECF No. 19-1 ¶ 9. Mr. Rodriguez does not challenge the FTC's failure to provide him with an estimate of fees and has thereby forfeited the argument. In any event, for the reasons explained above, the FTC treated Mr. Rodriguez's request properly because it was not obligated to respond to his request.

agency need not honor a request that requires 'an unreasonably burdensome search.'" *Am. Fed'n of Gov't Emps., Loc. 2782*, 907 F.2d at 209 (quoting *Goland*, 607 F. 2d at 353). That is especially so where the requester seeks "a vast quantity of material" that is not tailored to the requester's purpose for requesting the material. *Id.* Agency affidavits "enjoy a presumption of good faith," *Ground Saucer Watch, Inc. v. Cent. Intel. Agency*, 692 F.2d 770, 771 (D.C. Cir. 1981) (per curiam), and that presumption extends to declarations and affidavits laying out "good faith estimate[s] of the excessive amount of time required to" respond to a FOIA request, *Pinson v. U.S. Dep't of Just.*, 80 F. Supp. 3d 211, 216 (D.D.C. 2015).

The FTC has sufficiently established that Mr. Rodriguez's FOIA request would require an unreasonably burdensome search. The agency provides declarations from Margaret Horn, Acting Assistant General Counsel for the FTC's FOIA Unit, *see* ECF No. 19-1, and Jonathan Cohen, Chief Litigation Counsel in the FTC's Bureau of Consumer Protection, *see* ECF No. 16-2, which detail the time and resources that a search for responsive records would require.

The first part of Mr. Rodriguez's FOIA request seeks "all records . . . concerning . . . [c]onsumer complaints or FTC investigations regarding Meta Platforms, Facebook, Instagram, or WhatsApp involving biometric profiling, behavioral surveillance, or audio/video recording without consent." ECF No. 1-1, at 5. Ms. Horn explains that consumers are unlikely to use the terms "biometric profiling," "behavioral surveillance," and "audio/video recording without consent" in their complaints to the FTC, which makes it difficult for the agency to design search terms to identify responsive records. *See* ECF No. 19-1 ¶¶ 12-13. Accordingly, FTC employees would need to "manually review each of the 115,249 complaints" relating to the four companies in the relevant period to determine responsiveness and then redact any personally identifying

information from responsive records. *Id.* ¶ 13. Ms. Horn estimates that this process would take approximately 5,762 hours. *Id.*

As for records of investigations—which Mr. Rodriguez directly seeks in his first request and which relate to his fourth request for records concerning "[e]nforcement actions, proposed or closed, against Meta, Facebook, or Instagram, for background surveillance, predictive tracking, or dark patterns that resulted in reputational harm to consumers," ECF No. 1-1, at 2—Mr. Cohen explains that the FTC conducts both formal and informal investigative work, and the agency "has no centralized system to search for such informal investigative work by involved parties or subject matter," ECF No. 16-2 ¶ 6. Mr. Rodriguez's first request for records concerning "FTC investigations" and his fourth request for records concerning "[e]nforcement actions, proposed or closed," would thus require the FTC to search for records in virtually every part of the agency where records related to enforcement activity exist. ECF No. 1-1, at 2; *see* ECF No. 16-2 ¶ 7 (estimating that at least nine different FTC offices, including the Bureau of Consumer Protection's Division of Enforcement, Division of Privacy and Identity Protection, and Division of Advertising Practices, as well as the FTC Commissioners' Offices and the General Counsel's Office, likely possess records concerning FTC investigations). Similarly, Ms. Horn states that responding to the third part of the request—for records concerning "FTC reports or internal documents referencing" Mr. Rodriguez, ECF No. 1-1, at 3—"would require a search by nearly every office in the agency" because the FTC "does not maintain a centralized repository for records," ECF No. 19-1 ¶ 14. These sweeping agency-wide searches would require far more than a "reasonable amount of effort." *Truitt*, 897 F.2d at 545 n.36 (internal quotation marks omitted); *see Nat'l Sec. Couns.*, 969 F.3d at 409-10 (finding a search unreasonably burdensome where the agency would be required to

search "every office" across "decentralized and compartmented" records systems (internal quotation marks omitted)).

Mr. Cohen also estimates that searching for records responsive to the second part of Mr. Rodriguez's request for "[i]nternal memoranda or staff guidance regarding persistent telemetry, Custom Audience targeting, or data harvesting SDKs operating on Apple iOS devices," ECF No. 1-1, at 2, would require at least 3,520 hours, ECF No. 16-2 ¶¶ 15-21. He reached this "extremely conservative" estimate, ECF No. 16-2 ¶ 15, by speaking with employees in two FTC offices, and he confirmed that employees would need to search numerous different storage systems and communication channels, including emails, Teams, filing cabinets, and off-site storage facilities, *id.* ¶ 16. According to Mr. Cohen, at least fourteen divisions of the FTC's Bureau of Consumer Protection perform work related to targeted advertising, and a search for responsive records "would involve every attorney, or nearly every attorney" in those divisions—more than 200 attorneys in total, with each searching for at least sixteen hours. *Id.* ¶¶ 18-19; *see Wolf v. Cent. Intel. Agency*, 569 F. Supp. 2d 1, 9 (D.D.C. 2008) (concluding that 3,675 hours of search time was unreasonable).

Finally, the fifth part of Mr. Rodriguez's request seeks records concerning "[a]ny third-party data broker disclosures, FTC complaints, or redress efforts involving unauthorized Custom Audience inclusion or inferred targeting of [Mr. Rodriguez]." ECF No. 1-1, at 3. Mr. Cohen states that "a search for documents on any of these topics that could possibly show targeting of [Mr. Rodriguez] would be looking for a needle in the haystack." ECF No. 16-2 ¶ 14. As with the other parts of his request, Mr. Rodriguez does not identify any locations where records are likely to be found or other custodial limitations. In sum, Mr. Rodriguez's "failure to identify which record system to search or which office might maintain responsive records would require

the agency to conduct searches agency-wide, a process which would exceed the two (2) hours search afforded" to Mr. Rodriguez free of charge. *Latham v. U.S. Dep't of Just.*, 658 F. Supp. 2d 155, 161 (D.D.C. 2009) (internal quotation marks omitted).

Mr. Rodriguez provides no meaningful response to the FTC's arguments, instead asserting that the FTC "construe[d] [his] request in the broadest possible way" and that its declarations fail to show "why more targeted approaches could not substantially reduce the burden." ECF No. 21, at 9. But the FTC was required to read his request "as drafted, not as either agency officials or [the requester] might wish it was drafted." *Nat'l Sec. Couns.*, 969 F.3d at 410 (alteration in original). Mr. Rodriguez cannot reduce the burden created by his request now by seeking "a narrower date range" or searches of "more manageable segments." ECF No. 21, at 9. Regardless, "it is highly unlikely that even the type of search that [Mr. Rodriguez] suggests could be accomplished within the two-hour limit." *Pinson v. U.S. Dep't of State*, No. 12-CV-1872, 2015 WL 4910190, at *3 (D.D.C. Aug. 17, 2015). Accordingly, the FTC did not unlawfully withhold records because it was under no obligation to respond to Mr. Rodriguez's request.[7]

### C. Expedited Processing

In light of the court's conclusion that Mr. Rodriguez did not submit a proper FOIA request, Mr. Rodriguez's argument that the FTC erred in denying his request for expedited processing is moot. FOIA provides that a district court "shall not have jurisdiction to review an agency denial of expedited processing of a request for records after the agency has provided a complete response to the request." 5 U.S.C. § 552(a)(6)(E)(iv). Here, the FTC was not required to respond to

---

[7] Because the court finds that Mr. Rodriguez's request would require an unreasonably burdensome search, the court need not address the FTC's other arguments regarding the request's vagueness and burdensome post-search efforts.

Mr. Rodriguez's request, so "[t]here is nothing more to expedite." *Power the Future v. U.S. Dep't of State*, No. 24-CV-346, 2025 WL 343175, at *4 (D.D.C. Jan. 30, 2025); *see Legal Eagle, LLC v. Dep't of Just.*, No. 24-CV-3316, 2026 WL 35261, at *9 (D.D.C. Jan. 6, 2026) (dismissing an expedited-processing claim as moot where the agency had denied the FOIA request as improper); *Jenkins v. U.S. Dep't of Just.*, 263 F. Supp. 3d 231, 234 & n.2 (D.D.C. 2017) (concluding that because the plaintiff had not submitted a proper FOIA request that reasonably described the records sought, the agency "was not obligated to process the request at all, let alone on an expedited basis"); *see also Al-Fayed v. Cent. Intel. Agency*, 254 F.3d 300, 303 n.1 (D.C. Cir. 2001) (dismissing expedited-processing claims against agencies that had completed processing of FOIA requests).

In any event, Mr. Rodriguez failed to show a compelling need for expedited processing. *See* 5 U.S.C. § 552(a)(6)(E)(i). A "compelling need" exists (1) when "failure to obtain requested records on an expedited basis . . . could reasonably be expected to pose an imminent threat to the life or physical safety of an individual," or (2) when the requester is "primarily engaged in disseminating information" and there is "urgency to inform the public concerning actual or alleged Federal Government activity." *Id.* § 552(a)(6)(E)(v). Mr. Rodriguez's alleged risk of "reputational and privacy-based injury," ECF No. 1-1, at 10, and his desire to obtain records for his civil lawsuit, *see id.* at 3, 10, do not satisfy either standard.

## IV. CONCLUSION

For the foregoing reasons, the court will deny Mr. Rodriguez's Motion for Summary Judgment, ECF No. 13, and it will grant the FTC's Cross-Motion for Summary Judgment, ECF No. 17. A contemporaneous order will issue.

LOREN L. ALIKHAN
United States District Judge

Date: August 13, 2026